## Case No. 4,438.

### EMERSON v. GENNEY.

## Case No. 4,439.

### EMERSON v. HOGG.

Circuit Court, S. D. New York. May, 1847.

## Case No. 4,440.

### EMERSON v. HOGG et al.

[2 Blatchf. 1;[1] 1 Fish. Pat. Rep. 77; 40 Jour. Fr. Inst. 27.]

Circuit Court, S. D. New York. Dec. 1, 1845.

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

Francis B. Cutting, for plaintiff.
Seth P. Staples and John O. Sargent, for defendants.

BETTS, District Judge. The exceptions taken to the rulings of the court on the trial, and to the final instructions to the jury, and the points raised on the argument under those exceptions, embrace a great variety of topics, relating as well to general principles applicable to all patent cases as to the particular features of this case. Several days have been occupied in the discussion of those questions, but the conclusion to which we have come in examining the exceptions will spare us the necessity of considering the argument in its whole extent, and of adjudicating all the matters in controversy.

We think the exception well taken to the fourth instruction given by the court to the

jury, which is as follows: "Whether the specification be ambiguous is generally a question of law to be decided by the court. In this case, it is compounded of law and fact, and, if the jury find the fact to be that a spiral wheel and a spiral propeller are the same thing in ordinary acceptation, then the specification is sufficiently definite and certain in this respect." The part of the specification to which the instruction is applicable is this: "I employ an improved spiral paddle wheel, differing essentially from those which have heretofore been essayed. This spiral I make by taking a piece of metal of such length as I intend the spiral propeller to be, and of a suitable width, say, for example, eighteen inches; this I bend along the center so as to form two sides, say of nine inches in width, standing at right angles, or nearly so, to each other, and give to it, longitudinally, the spiral curvature which I wish. Of these pieces I prepare two, three, or more, and fix them on the outer end of the paddle-shaft, by means of arms of a suitable length, say two feet, more or less, in such a position that the trough-form given to them longitudinally shall be effective in acting upon the water. It must be entirely under water, and operate in the direction of the boat's way. Instead of metal, the spiral propeller may be formed of wood, and worked into the proper form, the shape, and not the material thereof, being the only point of importance."

The specification was objected to on the trial as ambiguous, and one of the particulars urged in support of the objection was, that it was uncertain, upon the face of the specification, whether the patentee claimed a wheel constructed spirally, or only spiral paddles attached to a wheel. The court did not dispose of the point as a question of construction merely, but left a fact to be found by the jury, and indicated the rule of law that would govern when that fact should be ascertained. This was undoubtedly error. It is the province and the duty of the court to settle the meaning of the patent, and, if that cannot be ascertained satisfactorily upon the face of the specification, the law declares it insufficient for ambiguity and uncertainty. Gods. Pat. 109, and Supp. 29; Phil. Pat. 249, 252. The meaning of the terms employed, in view of the object the inventor had in contemplation, and to ascertain the extent of his claim, must be determined and declared by the court. The specification is laid before the jury as defined and settled by the exposition of the court, and the matters of fact presented by the respective parties to support or defeat the patent are then to be examined and applied as if the construction fixed by the court had been incorporated in the specification. It accordingly devolved upon the court to dispose of the question as a point of law, and either to decide that the patent was in this respect ambiguous, and therefore void, and

direct the jury to find a verdict for the defendants, or to rule against the objection, and decide that the patent conveyed, in this particular, a meaning sufficiently certain, and point out what its claim was. Washburn v. Gould [Case No. 17,214]. This court cannot now estimate what effect upon the conclusions of the jury this wrong direction of the court may have had, and, as the defendants were entitled to an explicit instruction on the point, the refusal of the court to give it must necessarily avoid the verdict, it not being manifest that the point is irrelevant and immaterial to the issue tried.

The question whether the specification in this particular is so ambiguous and uncertain as to defeat the patent, was not argued on the exceptions, and we, therefore, forbear pronouncing upon that point now. It will remain to be brought up again on the new trial.

Numerous instructions were prayed for by the defendants. When the charge has not complied with the prayers, they are to be considered as refused, and exceptions will lie to the refusals of the court to give instructions when requested, in like manner as to the instructions actually given. Douglass v. McAllister, 3 Cranch [7 U. S.] 298; Smith v. Carrington, 4 Cranch [8 U. S.] 62; O'Neale v. Long, 4 Cranch [8 U. S.] 60; Pennock v. Dialogue, 2 Pet. [27 U. S.] 1; Pitts v. Whitman [Case No. 11,196]; Clymers' Lessee v. Dawkins, 3 How. [44 U. S.] 674. The court is accordingly to be regarded as having decided on the trial: (1) That the patent is good on its face, including the claim for three different inventions; (2) that the specification is not defective for ambiguity, in any particular other than the one submitted to the jury as before stated; and (3) that the specification sufficiently distinguishes the new mechanism from the old.

We shall not spread out at large the reasons governing our decision upon these general heads. Yet, as all the important questions involved in the case were fully argued, and the same questions may again arise on the new trial, we submit the conclusions adopted by us, as a guide in the future proceedings in the case. It will be the proper time to determine how far this present decision shall be held conclusive on these points, when the offer shall be made to re-open and review before us the same questions.

1. In Evans v. Eaton, 3 Wheat. [16 U. S.] 454, 506, and in Barrett v. Hall [Case No. 1,047], doubts are started whether, under the general patent law, improvements on different machines can regularly be comprehended in the same patent, so as to give a right to the exclusive use of the several machines separately, as well as a right to the exclusive use of them in combination. But the special statute (6 Stat. 70) applicable to the first case, furnished a rule in itself, and the doctrine intimated by the court must accordingly be accepted as put hypothetically, and not laid

down as a settled principle to govern the construction of specifications. The case of Barrett v. Hall [supra] attempts a generalization of the doctrines of the patent law, and, in the particular now under inquiry, the definition there adopted has no necessary connection with the case decided. Judge Story, in Moody v. Fiske [Case No. 9,745], enters a caveat against his reasoning in that case being held to authorize the including in one specification several improvements in separate machines, having distinct and independent operations; much less the claiming in the same patent a combination of different machines, and distinct improvements in each. The suggestions advanced in all these cases were by way of caution, and were probably designed to avoid the conclusions that the court had prejudged or was committed upon that particular form of the question. No one of the cases demanded a judgment upon the specific point. In Wyeth v. Stone [Id. 18,107] the court reviews those cases, and restricts their application to such inventions as are necessarily distinct from each other, and not contemplated to be used in connection, and holds that a patent for several machines, each being a distinct and independent invention, is valid, where they have a common purpose and are auxiliary to the same common end. Phil. Pat. 216, 217; Pitts v. Whitman [Case No. 11,196]. The principle seems to be, that the inventions should be capable of being used in connection, and to subserve a common end—Wyeth v. Stone [supra],—though their actual employment together does not seem to be required to sustain the validity of the patent in which they may be united. Accordingly, the wrongful use of either separate machine is a violation of the patent right pro tanto. Wyeth v. Stone [supra].

We think the specification in this case shows that these three separate machines were contrived with the view of being used conjointly, and as conducing to a common end, in the better propelling and navigating a ship, and, in our opinion, their capability of being used separately and independent of each other, does not prevent their being embraced in one patent.

2. We think the other objections of ambiguity are not supported. The patent sufficiently indicates what the patentee claims to be his improvement, and the only question is, whether his description is sufficiently full and exact to enable a mechanic to construct the new machine. This is a fact to be inquired into and settled by the jury, and not a matter for the court to adjudicate. If it be decided that the patent claims the invention of a spiral wheel, or of a spiral propeller, as distinct and different from a wheel, there does not seem to the court any further uncertainty or ambiguity as to the object sought to be secured by the patent.

3. We think, also, the specification distinguishes the new mechanism from the old

with as much particularity as is required by the rules of law. It describes the invention, and how that is to be applied, and the law does not render it necessary to set forth the old machinery with which the new contrivance is to be connected. Phil. Pat. 270, and cases there cited. The drawing becomes part of the patent, and may be referred to in order to help out the description. But in neither need the old and well-known parts of the machine be described or delineated, when no change in their forms or proportions enters into the new invention.

One great object of the exceptions taken by the defendants is to rectify the decision of the court as to the admissibility of evidence.

1. It is contended that the court erred in admitting the drawings in evidence, they not being referred to in the specification. It is at best equivocal, whether the act of February 21, 1793 (1 Stat. 318, 322), requires the specification to contain written references to drawings. The language (section 3) is: "and he shall accompany the whole with drawings and written references," &c. The express terms of the clause no more require that the written references should be incorporated in the specification, than that the drawings should be. Judge Story first read the section as demanding that the references should be set forth in the specification. Earle v. Sawyer [Case No. 4,247]. But the specification in that case was so prepared, and accordingly the interpretation of the statute was not demanded of the court. Congress clearly suppose that the drawings are not necessarily to be noticed in the patent, for they say, in the act of March 3, 1837, § 1 (5 Stat. 191), "wherever a drawing was not originally annexed to the patent, and referred to in the specification," &c. And again, in the 3d section of the same act, the mode of making evidence of the drawing of an invention, if separate from the patent, is prescribed in language importing that it may be distinct, and without connection, by references or otherwise, with the patent.

Upon general principles, and in view of the policy and convenience of the matter, it might probably have been the better construction to hold that the drawings should be so connected, by reference or annexation, to the specification, as to make it certain that a drawing was relied upon, and what particular one was intended. There could then be no mistaking what was to be examined to learn the inventor's discovery, and no surprise could be practised by offering in evidence a different drawing, or producing one that had not been originally prepared with the description, to fix its meaning and extent. But we think the more recent acceptation with the circuit judges has been, that the patentee complies with the requirements of the act, if he puts on file, with his specification, drawings and written references, without their being mentioned in the specification, and that, if the references required

are written on the drawings, the terms of the statute are satisfied. This was directly decided by Judge Story in Washburn v. Gould [Case No. 17,214], and seems to have been so ruled by Judge McLean in Brooks v. Bicknell [Id. 1,944]. The long usage at the patent office to receive and record drawings not referred to in the specification, is of weight, also, in fixing the meaning of the clause. And we, in this case, conform our construction of the law to that usage and understanding, and hold that there was no error in the decision of the court at the trial on this point.

2. Another objection much pressed on the argument was, that the court admitted in evidence several different copies of drawings filed by the patentee. It was insisted that he was not entitled, under the act of March 3, 1837, to offer in evidence any other than the first drawing deposited by him in obedience to the requirement of that act.

The original patent and drawings were destroyed with the patent office in 1836. On the proof of that fact the plaintiff would, at common law, have been entitled to give secondary evidence of the contents of those documents. The second section of the act of 1837 restricts this common law rule of evidence, and interdicts the receiving any patent in evidence, unless it be re-recorded conformably to that act, and also excludes drawings not verified pursuant to that act. The first section of the act authorizes any person having in his possession or being interested in any patent issued prior to December 15th, 1836, to have the same recorded anew in the patent office, together with the descriptions, specifications of claim, and drawings annexed or belonging to the same. Then follows a direction to the commissioner to cause the same, or any authenticated copy of the original record, specification or drawing which he may obtain, to be transcribed and copied into books of record. The act then declares: "And wherever a drawing was not originally annexed to the patent, and referred to in the specification, any drawing produced as a delineation of the invention, being verified by oath in such manner as the commissioner shall require," may be filed, &c.; and, by the second section, copies thereof, certified by the commissioner, are made primâ facie evidence, the same as copies of the original record.

The plaintiff, after the loss of his original drawings, made out and filed a copy verified as directed by the commissioner, and subsequently, considering that copy imperfect, he had another prepared and verified and filed. The certified copy of this second one was offered in evidence and received by the court, and to that admission the exception applies.

We think the evidence was properly admitted upon either one of two grounds: (1) The plaintiff had a right to draw up at any time a delineation or pictorial representation of his invention, and present it in elucidation of his written description. It performs in part the office of a model, which may at any time be constructed for the purpose of illustrating and giving application to contrivances which may be obscure or difficult to understand, as described in the specification. Phil. Pat. 294, 295. (2) This drawing was not originally annexed to the patent and referred to in the specification, and accordingly was of that particular class which was to be received at the discretion of the commissioner. The provisions of the first section of the act of 1837 are full to show the meaning of congress, that the board of commissioners were to take all practicable measures for restoring to the files the best possible substitutes for lost drawings. They may be prepared in the patent office, or obtained from clerks of courts, &c. When put on file they are public records, and all parties are entitled to copies of them, and such copies must be received in evidence, when offered. If they are discordant, one may destroy the effect of another. But, if they concur in the essential particulars of the invention, the fact that there is a variety of them, derived from different sources, would conduce to prove that the contents of the original one are substantially recovered. We think the authentication of the commissioner entitled the party presenting the copy to read it in evidence, in the first instance, and that the facts proved or offered to be proved on the part of the defendants, did not entitle them to exclude from the consideration of the jury the copy offered by the plaintiff. (3) It might be added that the plaintiff was entitled to give evidence of the filing of his drawings, or of any other act done by him in 1841, in assertion of his patent right. One branch of the defence taken in the notice under the plea was, that the plaintiff had abandoned his discovery, and the lapse of time from the grant of the patent to the commencement of this suit was urged as proof of that fact. The plaintiff was entitled to rebut any presumption of abandonment by showing acts prosecuting or asserting his discovery.

3. It is objected that the plaintiff is not entitled to damages for infringements committed anterior to the re-recording of his patent, and that the jury were not correctly instructed on that subject. The charge imports a general liability of the defendants, and no intimation is given that their liability ought to be so qualified. This point was not raised at the trial. The court was not prayed to instruct the jury otherwise, nor was a specific exception taken to the direction as given. If the defendants wished more definite instructions, or desired that those given should be qualified, they should have called the matter to the notice of the court, that the mistake, if one, might have

been then rectified. No advantage can now be taken. if an error has been so committed. Smith v. Carrington, 4 Cranch [8 U. S.] 62; Carver v. Jackson, 4 Pet. [29 U. S.] 1; Norman v. Wells, 17 Wend. 136; Stafford v. Bacon, 1 Hill, 532, 537.

A new trial must be granted, the costs to abide the event.[3]

[3] The case was again tried before Nelson, J., in May, 1847, when the plaintiff again had a verdict. The defendants. after judgment, carried the case to the supreme court. where it is reported as Hogg v. Emerson in 6 How. [47 U. S.] 437. and in 11 How. [52 U. S.] 587. and where the decision of this court as to the validity of the patent was sustained.

